**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

PAMELA R. BAILEY,

    Plaintiff,

vs.

JOANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

No. C05-4011-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A. Synopsis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B. Standards Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. The Record* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *B. The ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *C. Judge Zoss's Report And Recommendation* . . . . . . . . . . . . . . . . . 7
    *D. Bailey's Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*III. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A. Is The ALJ's Decision Supported By Substantial Evidence?* . . . . . . . . 9
        *1. Bailey's impairment* . . . . . . . . . . . . . . . . . . . . . . . . 10
        *2. Residual functional capacity* . . . . . . . . . . . . . . . . . . 12
        *3. Need for a vocational expert's opinion* . . . . . . . . . . . 14
    *B. Should The Court Remand Or Order Benefits?* . . . . . . . . . . . . . . 16

*IV. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

### A. *Synopsis*

Plaintiff Pamela R. Bailey seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Title II disability insurance ("DI") benefits. Bailey sought benefits on the basis of Sheehan's syndrome, Chronic Fatigue Syndrome, Major Depressive Disorder, chronic pain from a tail bone fracture, Hepatitis C, hypopituitarism, hypothyroidism, hypoadrenalism, foot pain, and other pain complaints. The ALJ denied Bailey's application for benefits and that denial of benefits was affirmed at each subsequent stage of the administrative proceedings so that it became the decision of the Commissioner of Social Security. On judicial review, Judge Zoss recommended that the Commissioner's denial of benefits be affirmed. *Bailey v. Barnhart*, No. C05-4011-MWB, 2006 WL 162826, *1 (N.D. Iowa Jan. 23, 2006). Bailey filed an objection to the Report and Recommendation and the Commissioner filed a response to Bailey's objection. The court finds this matter is now fully submitted and ready for consideration.

### B. *Standards Of Review*

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)). Bailey has made specific, timely objections in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. *See* 28 U.S.C. § 636(b)(1).

In this case, the court's *de novo* review requires application of the standard of judicial review for cases involving the denial of social security benefits is based on 42 U.S.C. § 405(g), section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." This court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

> Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." *Id*. If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions

> represents the Commissioner's findings, the court must affirm the Commissioner's decision.

*See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

The Eighth Circuit Court of Appeals also has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir. 1989)); *accord Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (the court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial"); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."). In reviewing the record for substantial evidence, the court may not make its own findings of fact by re-weighing the evidence and substituting its own judgment for that of the Commissioner. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). Weighing the evidence is a function of the ALJ, who is the "statutory" fact-finder. *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Instead, the court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Krogmeier*, 294 F.3d at 1022; *accord Jones v. Barnhart*, 335 F.3d 697, 698 (8th. Cir. 2003). In addition, the court must also review the Commissioner's decision and decide whether the Commissioner considered and applied the proper legal standard. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n. 2 (8th Cir. 1995).

## II. BACKGROUND

### A. *The Record*

Bailey worked for Interbake foods for sixteen years, until 1997. (R. at 222-224, 234-235.) Eventually Bailey was promoted to supervisor at Interbake in 1994. (R. at 222-224, 234-235.) During this time, in 1993, Bailey was diagnosed with Sheehan's syndrome and had surgery on her feet apparently during her employment with Interbake. (R. at 235.) Interbake then gave Bailey an ultimatum to voluntarily resign with six months severance pay because she had missed work due to Sheehan's syndrome, foot surgeries, pituitary dysfunction and various other type illnesses or she would be terminated. (R. at 223-224, 236.) The record implies that Bailey accepted Interbake's offer and resigned in 1997. (R. at 223, 234.) In addition to Sheehan's syndrome and the accompanying Chronic Fatigue Syndrome, Bailey was diagnosed with Major Depressive Disorder in 2001, chronic pain from a tail bone fracture in 2002, Hepatitis C contracted in 2002, hypopituitarism, hypothyroidism, and hypoadrenalism progressing from the Sheehan's syndrome. (R. at 51.)

Subsequently, Bailey attempted to work as a motel maid, in a grocery store, as a dishwasher, as an assembler, and as a bottle and can recycler. Bailey failed at these jobs due to her frequent illnesses. (R. at 221-222, 238.) Bailey does not drive and her driver's license has lapsed. (R. at 237.)

Bailey filed an application for disability benefits with an alleged onset date of November 30, 2001. ( R. at 45-47.) Bailey has several treating physicians and receives pain injections, thyroid regulatory medication, pills and injection for the hepatitis C, and anti-depressants among a long list of medications. (R. at 226-233.) Periodically, Bailey has been without funds to purchase her medications. (R. at 236.) Bailey was referred by Disability Determination Services to undergo a psycho-diagnostic mental status evaluation.

5

The evaluation in June of 2003, included a Global Assessment of Functioning ("GAF") of 35 which indicated Bailey suffered from serious Major Depressive Disorder. (R. at 122.) In contrast, non-treating physicians who reviewed Bailey's files stated that there was not enough information in the medical records to evaluate her disability claim. (R. at 124-39.) In November of 2003, Bailey participated in another mental health intake evaluation that revealed a GAF of 50, indicating serious impairment of social and occupational functioning. (R. at 184.) In December, 2003, Bailey saw yet another mental health provider, who diagnosed her with major Depressive Disorder Recurrent and changed her medication. (R. at 178.)

In addition to the treatment of her mental condition, Bailey has continued her medical therapies for physical impairments, including medication and physical therapy. (R. at 192.) Thus, the record indicates a long, continuous progression of worsening physical and medical disorders and little, if any, improvement.

### B. *The ALJ's Decision*

The ALJ found that Bailey had not engaged in any substantial gainful activity since her onset date. (R. at 14.) However, the ALJ did not find Bailey's physical impairments to reach the level of disability. (R. at 14-15.) The ALJ found Bailey's depression to be a non-severe impairment, because Bailey could watch television, shop with her husband, and visit with her mother. (R. at 15.) The ALJ also found Bailey to be non-compliant, because she was unable to purchase her medications and missed treatment appointments. (R at 17.) Finally, the ALJ found that though Bailey could not return to her past relevant work there were other exertional jobs she could perform. (R. at 16.) In making these findings, the ALJ gave no weight to the limitations that the examining mental health professionals had diagnosed. (*Id.*)

6

## C. Judge Zoss's Report And Recommendation

Judge Zoss's Report and Recommendation first addressed Bailey's physical disabilities as follows;

> The court finds the ALJ's residual functional capacity assessment is supported by the evidence of record. Throughout Dr. Kipp's treatment notes, he never indicates Bailey has any physical restrictions on her functional abilities. In his checklist regarding Bailey's abilities, the doctor notes Bailey would be able to sit for four hours in an eight-hour day, and stand or walk for four hours in an eight-hour day. He further indicates sitting at a desk would provide adequate rest from standing/walking activities. When read with the remainder of the record, Dr. Kipp's opinion of Bailey's abilities supports a conclusion that she would be able to work. Thus, the court finds the ALJ gave proper weight to Dr. Kipp's opinion in making a determination of Bailey's residual functional capacity.

*Bailey*, No. C 05-4011-MWB, 2006 WL 162826 at *16.

As to Bailey's mental disabilities, Judge Zoss opined as follows:

> The ALJ found Bailey had little or no non-exertional impairments that would limit her ability to perform work identified by the regulations. "Non-exertional limitations are those that affect a claimant's 'ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing, or pulling . . . '" *Burnside v. Apfel*, 223 F.3d 840, 844 (8th Cir. 2000) (citing 20 C.F.R. §§ 404.1569a(a), 416.969a(a)). In finding Bailey has no significant non-exertional limitations, the ALJ discounted Dr. Baker's opinion that Bailey would be significantly limited in her ability to remember, understand, and carry out instructions, or maintain attention, concentration, and pace. The court agrees the record contains substantial evidence that contradicts Dr. Baker's conclusions. Although the evidence indicates Bailey suffers from depression, it appears her lack of activity is a significant factor in her depression. It also appears

> her depression is well controlled by medication, and if
> depression has limited her ability to work at all, it did so only
> for a few months. Having determined Bailey's ability to work
> is not limited by a non-exertional impairment, the ALJ properly
> applied Grid Rule 202.20 in making his determination that
> Bailey is not disabled. "Use of the Guidelines is appropriate if
> the ALJ explicitly discredits subjective complaints of pain [and
> other limitations] for a legally sufficient reason." *Carlock v.
> Sullivan*, 902 F.2d 1341, 1343 (8th Cir. 1990). The court finds
> the ALJ appropriately applied the Grid Rule in determining that
> Bailey is not disabled. *See Hunt v. Heckler*, 748 F.2d 478, 480
> (8th Cir. 1984).

*Id*. at *17. Although the ALJ and Judge Zoss both indicate that substantial evidence contradicts the treating and examining mental health providers' assessments of depression, neither included that "contradictory" evidence in the opinions. Moreover, a search of the record fails to reveal any medical opinion by any of the mental health care practitioners that the source of Bailey's major depressive disorder is voluntary "inactivity". Bailey asserts her inactivity is created by her physical limitations. (R. 176-177.)

### D. *Bailey's Objections*

Bailey objects to the Report and Recommendation. (Doc. No. 13.) Bailey argues that the record lacks substantial evidence to support the determination that she had the exertional capacity to perform light work because the ALJ rejected both the treating physicians' opinions and gave little weight to other examining sources, but did not rely on any other medical source for his decision.

Further, Bailey argues that there is not substantial evidence to support the determination that she had unlimited non-exertional functional capacity. Bailey argues that the ALJ erred in failing to obtain testimony of a vocational expert for determination of

Bailey's past relevant work and whether she could perform it or any other work.

Finally, Bailey asserts that it is unnecessary to remand her case with further direction to the ALJ because the evidence in the record supports a finding of disability.

## III. LEGAL ANALYSIS
### A. Is The ALJ's Decision Supported By Substantial Evidence?

As explained in more detail above, this court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). The Commissioner must, in the first instance, follow a five-step sequential evaluation process, as outlined in 20 C.F.R. §§ 404.1520 and 416.920, as follows: (1) Determine whether the claimant has engaged in substantial gainful activity (if so, the claimant is not disabled); (2) if the claimant has not engaged in such activity, determine whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities (if not, the claimant is not disabled); (3) if so, determine whether the impairment meets or equals one of the presumptively disabling impairments listed in the regulation (if so, the claimant is disabled); (4) if the impairment is severe, but does not meet or equal one of the presumptively disabling impairments, determine the claimant's "residual functional capacity" to determine whether the claimant can perform past relevant work; and (5) if the claimant's residual functional capacity is such that the claimant cannot perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's residual functional capacity, age, education, and work

experience, and that such other work exists in significant numbers in the national economy (if there is no such work, the claimant is entitled to disability benefits). In this case, Bailey contends that the ALJ erred at steps 2 through 5. The court finds so much evidence contradicting the Commissioner's decision, and so little supporting it, that the court cannot find that the overall evidence in support of the Commissioner's decision is "substantial." *Baldwin*, 349 F.3d at 555.

### 1. *Bailey's impairment*

Contrary to the ALJ's findings, the record reveals that Bailey's assertion of mental and physical limitations is supported by both treating and consulting practitioners. The Disability Determination Service ("DDS") psychologist found Bailey to be clinically depressed after the psycho-diagnostic mental status exam. *Bailey*, No. C 05-4011-MWB, 2006 WL 162826 at *6. Bailey's intake exam at Siouxland Mental Health Center revealed that Bailey suffered from major depressive disorder. *Id*. at 8. The third mental health professional to treat Bailey, a psychiatrist, changed Bailey's medication in an effort to achieve more improvement in Baileys mental health functioning. *Id*. The record reveals only one contrary professional comment from a non-examining, non-treating psychologist, who disagreed with the DDS psychologist's conclusions, but after only reviewing the record.

The Social Security regulations contain detailed instructions regarding how to evaluate medical evidence, including medical opinions. *See* 20 C.F.R. § 404.1527 (2003), *see also* 20 C.F.R. § 416.927 (2003). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (2003). Generally, more

weight is given to treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). The weight to be given consultative evaluations and opinions is determined using the same factors as used for treating physician opinions. *Id.* Finally, "the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (*citing Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) (2003). The ALJ is required to evaluate every medical opinion he receives. 20 C.F.R. § 404.1527(d) (2003). Additionally, when considering whether the ALJ has properly denied Social Security benefits, we determine whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence on the record as a whole. *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996). Here, the ALJ failed to give proper weight to the treating physicians' opinions. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). Further, the ALJ failed to credit the opinions of Bailey's treating physicians, when these opinions were well supported by medically acceptable clinical and laboratory diagnostic tests and not inconsistent with the other substantial evidence on the record. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

Thus, this court does not find substantial evidence to support the ALJ's finding that Bailey has no non-exertional disability, because there is little, if any, evidence supporting the ALJ's view, and so much evidence detracting from that view. *Hutsell*, 259 F.3d at 714 ("In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision.") (quoting *Easter*, 867 F.2d at 1131); *accord Baldwin,* 349 F.3d at 555

(the court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial"); *Howard*, 255 F.3d at 581 ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."). Thus, the ALJ's decision is fatally flawed at the second and third steps of the five-step analysis of Bailey's claim for disability benefits, determination of impairment and severity of impairment.

### 2. *Residual functional capacity*

At the fourth step in the analysis, determination of residual functional capacity, the ALJ found that although Bailey "suffer[s] from some discomfort that limits her from engaging in certain physical activities," she nevertheless "retains the residual functional capacity to perform a light level of exertion; i.e., lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to six hours in a workday; and sit up to six hours in a workday with occasional stooping involved." (R. 15.) The ALJ found Bailey is incapable of returning to her past relevant work. Neither Bailey nor the court disagrees with that conclusion.

As Judge Zoss explained,

> [I]f the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner "to prove that there is other work that [the claimant] can do, given [the claimant's] RFC [as determined at step four], age, education, and work experience." Clarification of Rules Involving RFC Assessments, etc., 68 Fed.Reg. 51,153, 51,155 (Aug. 26, 2003). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(4)(v); *Dixon*,

> supra; *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790(citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).

*Bailey*, No. C 05-4011-MWB, 2006 WL 162826 at *14.

After concluding that Bailey could not perform her past relevant work, the ALJ concluded that other jobs exist that she can perform, applying the Medical-Vocational Guidelines to reach this conclusion. He noted Bailey is considered a younger individual (noting she was 44 years of age at the time of the hearing), and has a high school education and a history of unskilled work. He therefore concluded "Rule 202.20 applies to the evidence and provides a framework that she be found 'not disabled." (R. at 18.) The ALJ was only able to apply the "grids" after finding that Bailey did not suffer from a non-exertional disability as she alleges. However, as explained above, the court rejects the ALJ's finding that Bailey has no non-exertional disability, because that finding is not supported by substantial evidence. Therefore, the court finds no substantial evidence that Bailey can perform other jobs in the national economy. *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If a claimant has a non-exertional impairment, the guidelines and grid are not controlling and cannot be used

to direct a conclusion that the claimant is disabled or not disabled without regard to other evidence, such as vocational testimony. *See McCoy v Schweiker*, 683 F.2d 1138 (8th Cir. 1982); *Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000).

### 3. *Need for a vocational expert's opinion*

There are two methods by which the Commissioner can meet the burden at step five of proving that Bailey can perform substantial gainful employment: (1) by the use of the medical-vocational guidelines ("grids"); or (2) by the ALJ's production of a vocational expert who expresses an opinion on whether the claimant can perform alternative employment. *See Garrett v. Richardson,* 471 F.2d 598, 603-04 (8th Cir. 1972). As the Eighth Circuit Court of Appeals explained some time ago,

> In *Garrett v. Richardson*, 471 F.2d 598, 603-604 (8th Cir. 1972), this court observed:
>> The burden of producing such a person must rest with the hearing examiner and in the absence of substantial evidence from other sources bearing directly on the issue of "substantial gainful activity," the testimony of a vocational counselor is essential for the affirmance of an examiner's findings.
>
> Our statement in *Garrett* does not mean in every Social Security disability hearing the administrative judge must call as a witness a vocational counselor. Where, however, the essential issue relates to the capacity of the claimant to perform a specific job and there is no other evidence directly on that issue, in order for the record to be fully and fairly developed, a vocational expert should be called.

*Johnson v. Richardson*, 486 F.2d 1023, 1025 (8th Cir. 1973).

This is a case in which the testimony of a vocational expert setting out precisely the plaintiff's psychological and psychiatric impairment would have been critical to the determination of disability. The ALJ believed that the testimony of a vocational expert

would not have been useful because though the ALJ found Bailey could not return to her previous employment, the ALJ did not find that Bailey had established any physical impairments that would prohibit other employment. However, a claimant may be disabled under the Act by reason of a medically determinable physical *or mental* impairment, and it is proper and necessary to set out any mental impairments in a hypothetical question to a vocational expert. *See Camp v. Schweiker,* 643 F.2d 1325, 1331-32 (8th Cir. 1981).

Bailey argues that the ALJ erred by substituting the ALJ's medical judgment for that of the medical experts, and that by doing so, the ALJ improperly eliminated the necessity for a vocational expert to evaluate the non-exertional factors relating to her Residual Functioning Capacity. The courts have recognized that vocational expert testimony is required in order to determine whether a claimant suffers from a non-exertional disability regardless of the findings directed by the medical-vocational guidelines.

> It is well settled Eighth Circuit case law that, having found Plaintiff is unable to do her past relevant work, the burden of proof shifted to the Commissioner to come forward with medical evidence to prove Plaintiff has a residual functional capacity for other work, and that other work exists in significant numbers in the national economy that such a person is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983); *Soth v. Shalala*, 827 F. Supp. 1415, 1417 (S.D.Iowa 1993). It is also well settled law that in order to meet the second prong of the Commissioner's burden, in cases where referral to the medical vocational guidelines (Grid) is inappropriate, the ALJ must rely on the testimony of a vocational expert in response to a hypothetical question which precisely sets out the claimant's impairments and limitations. *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir. 1990).

*Haines v. Apfel*, 986 F. Supp. 1212, 1215 (S.D.Iowa,1997)

Here, one of the treating mental health professionals opined that Bailey's ability to

remember, understand, and carry out instructions requiring attention, concentration, and pace was extremely limited. (R. 122.) Nevertheless, the ALJ formulated a residual functional capacity that included no limitations regarding mental acuity despite several diagnoses of and treatment for Severe Recurrent Depression and did not call a vocational expert to testify as to the effect of any mental impairments. (R. 15). Thus, the ALJ lacked the necessary evidence from a vocational expert to meet the Commissioners's burden to prove that Bailey can perform substantial gainful employment other than her past relevant work. *Garrett*, 471 F.2d at 603-04 (if the ALJ cannot use the "grids," the ALJ can only meet this burden by producing a vocational expert who expresses the opinion that the claimant can perform alternative employment); *accord Johnson*, 486 F.2d at 1025; *Haines*, 986 F. Supp. at 1215.

Under these circumstances, the court finds that the ALJ's decision is not supported by substantial evidence on the record as a whole.

### *B. Should The Court Remand Or Order Benefits?*

The court may affirm, modify or reverse the Commissioner's decision with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g). Where a remand would only delay the inevitable award of benefits to which the claimant is entitled, the court may reverse and order an award of benefits. *Duncan v. Barnhart*, 368 F.3d 820, 824 (8th Cir. 2004); *Cline v. Sullivan*, 939 F.2d 560, 569 (8th Cir. 1991) (where the record itself "convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate") (citing *Jefferey v. Secretary of H.H.S.*, 849 F.2d 1129, 1133 (8th Cir. 1988); *Beeler v. Bowen*, 833 F.2d 124, 127-28 (8th Cir. 1987); *accord Thomas v. Apfel*, 22 F. Supp. 2d 996, 999 (S.D. Iowa 1998) (where claimant is unable to do any work in the national economy,

remand to take additional evidence would only delay receipt of benefits to which claimant is entitled, warranting reversal with award of benefits). In this case, notwithstanding the lack of substantial evidence to support the ALJ's findings, the court cannot find that a remand would only delay the award of benefits to which Bailey is entitled, *Duncan*, 368 F.3d at 824, or that the record "convincingly establishes disability." *Cline*, 939 F.2d at 569. Rather, the record was so poorly developed by the ALJ, and the ALJ failed to produce a VE's opinion concerning Bailey's ability to perform alternative employment when required by Bailey's non-exertional limitations, that a remand is required.

It is the ALJ's duty to thoroughly examine the facts and create a complete record in each case.

> It merits comment, however, that the hearing respondent received, . . ., if it is in any way indicative of standard practice, reflects poorly on the Administrative Law Judge's adherence to what Chief Judge Godbold has called his "duty of inquiry":
>
> "[T]here is a 'basic obligation' on the ALJ in these nonadversarial proceedings to develop a full and fair record, which obligation rises to a "'special duty . . . to scrupulously and conscientiously explore for all relevant facts'" where an unrepresented claimant has not waived counsel. This duty of inquiry on the ALJ would include, in a case decided under the grids, a duty to inquire into possible non-exertional impairments and into exertional limitations that prevent a full range of work." *Broz v. Schweiker*, 677 F. 2d 1351, 1364 (CA 11, 1982)

*Heckler v. Campbell*, 461 U.S. 458, 471 103 S. Ct. 1952 (1983). Here, the ALJ failed to meet that "basic obligation." The court trusts that, on remand, the ALJ will not fail to do so again. However to insure proper development of the record, the court will remand this case with the following directions: 1) the ALJ must give proper weight to the opinions

of Bailey's treating physicians and mental health providers; and 2) the ALJ must utilize the services of a vocational expert in determining the non-exertional limitations upon Bailey's employment.

## IV. CONCLUSION

Upon *de novo* determination of those portions of the Report and Recommendation to which objection has been made, the court concludes that the ALJ failed to fairly develop the record and that the denial of benefits is not supported by substantial evidence. The Report and Recommendation recommending a different disposition of this matter is **rejected**, § 28 U.S.C. 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.")

Because the ALJ failed to develop the record, the court **reverses** the ALJ's decision and **remands** this case to the Commissioner for further development of the record consistent with this opinion. On remand, (1) the ALJ must give appropriate weight to the opinions of Bailey's treating physicians and mental health providers; and (2) the ALJ must utilize the services of a vocational expert in determining the non-exertional limitations upon Bailey's employment. The Commissioner shall, thereafter, issue a new decision consistent with the opinion of this court.

**IT IS SO ORDERED.**

**DATED** this 23rd day of March, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA